UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT B. SALTZMAN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WHISPER YACHT, LTD.; | : | |
| WHISPER YACHT (USA), LLC; | : | C.A. No. 19-285MSM |
| CHURCHILL YACHT | : | |
| PARTNERS, LLC; and | : | |
| S/Y WHISPER (Official # 71042) | : | |
| its engines, sails, spars, rigging, apparel, | : | |
| contents, bunkers, electronics, tenders | : | |
| and appurtenances, *in rem*, | : | |
|     Defendants. | : | |

<u>Consolidated with</u>

| | | |
|---|---|---|
| ROBERT B. SALTZMAN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-463MSM |
| | : | |
| SIMON DAVISON, | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Based on an on-board accident during which his arms were seriously injured after being sucked in by the furling of the head sail, Plaintiff Robert B. Saltzman claims that he was a seaman crewing on the vessel and initiated this admiralty action[1] against the sailing yacht and three entities. He sued *in rem* S/Y Whisper, the vessel on which he was working when the accident happened. As the vessel owner and his employer, he named Defendants Whisper

---

[1] Plaintiff has also sued Simon Davison, the Captain of S/Y Whisper, based on the same incident. <u>Saltzman v. Davison</u>, C.A. No. 19-463MSM. That case has been consolidated with this one for discovery. Text Order of Oct. 22, 2019. The pending motion has no impact on <u>Saltzman v. Davison</u>.

Yacht, Ltd. ("Whisper Ltd."), Whisper Yacht (USA), LLC ("Whisper USA"), and Churchill Yacht Partners, LLC ("CYP"). His Verified Complaint advances five causes of action: Count I, unseaworthiness; Count II, negligence under the Jones Act, 46 U.S.C. § 30104, *et seq.*, for failure to provide a reasonably safe place to work; Count III, maintenance and cure; Count IV, wages; and Count V, negligence under general maritime law, which Plaintiff alleges "[a]s an alternative Count." ECF No. 1 ("Complaint" or "Compl.").

Instead of an answer, two motions to dismiss or in the alternative for summary judgment were filed as the responsive pleading.

First, all Defendants joined a motion to dismiss or in the alternative for partial summary judgment based on their contention that the Complaint and/or the undisputed facts establish that Plaintiff was not a seaman at the time of the accident. ECF No. 18. Based on a factual proffer, they argued that all Jones Act claims (Counts I, II, III and IV) fail as a matter of law. This first motion was met with a barrage of contrary facts proffered by Plaintiff. In their reply, Defendants acknowledged that more discovery would be required on Plaintiff's seaman status. My recommendation that the first motion be denied is pending.[2] ECF No. 37.

The second motion is addressed in this report and recommendation. It is brought by Defendants Whisper USA and CYP only. Grounded in Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 56, the motion challenges Plaintiff's allegation (pled on information and belief) that not just Whisper Ltd., but also Whisper USA and CYP "managed, supervised, crewed and/or operated" and "were responsible for owning . . . and/or maintaining" S/Y Whisper and "employed" him. Compl. ¶¶ 16-17. The moving Defendants argue that neither of them owns the S/Y Whisper and neither was Plaintiff's employer at the time of the accident, which are essential elements of Plaintiff's

---

[2] The reader's familiarity with that report and recommendation is assumed.

2

claims. Both point to the third entity, Defendant Whisper Ltd., which admits – indeed, asserts – that it is the sole owner of S/Y Whisper and that it was Plaintiff's employer. ECF No. 30 ¶¶ 11, 16 (Whisper Ltd. Answer); ECF No. 39 at 14. Whisper USA and CYP argue that, because they are neither the vessel owner nor Plaintiff's employer, as to them, Count I fails because it must be directed at the vessel owner; Counts II and III are flawed because they require an employee-employer relationship between the plaintiff and defendant; Count IV is deficient since it must be alleged against the vessel owner or the seaman's employer; and Count V is a nonstarter because the lack of an employment connection means that they did not owe Plaintiff a duty of care under general maritime law. In response, Plaintiff does not rely just on his pleading (which is verified); in addition, he has marshalled an array of pre-discovery facts that he contends are sufficient to establish that the factually disputed interconnected web of business arrangements among Whisper USA, CYP and Whisper Ltd. precludes a determination as a matter of law of ownership or employer status at this early stage.

The motion has been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B).

I. **BACKGROUND**[3]

The S/Y Whisper is a 116-foot privately owned recreational sailing yacht. PSUF ¶ 1. At the time of the accident in issue in this case, it was docked at a marina in Newport, Rhode Island. Compl. ¶ 50. During the pertinent period, according to its Certificate of Ownership, S/Y Whisper was registered under the Marshall Islands Flag and was owned by Whisper Ltd., a

---

[3] This background section draws from the Complaint and the parties' Fed. R. Civ. P. 56 submissions, which include Defendants' statement of undisputed facts (ECF No. 21 ("DSUF")), Plaintiff's statement of disputed facts (ECF No. 24 ("PSDF")), Plaintiff's statement of undisputed facts (ECF No. 25 ("PSUF")), and Defendants' statement of disputed facts (ECF No. 27 ("DSDF")). It also relies on the parties' affidavits and declarations, including the exhibits attached to them.

3

Cayman Island entity. DSUF ¶ 2; Compl. Ex. A. Whisper Ltd. is a wholly owned subsidiary of Whisper USA, which is a limited liability company organized under the laws of Minnesota. DSUF ¶¶ 3-4. Invoices for maintenance work on S/Y Whisper were paid by Whisper USA; Defendants contend this was done as a pass-through to Whisper Ltd. based on convenience and timing. DSDF ¶¶ 14, 57.

CYP is also a Minnesota limited liability company. DSUF ¶ 5. It is engaged in the business of luxury yacht charter management and S/Y Whisper is one of the yachts that its clients may charter. DSDF ¶ 10. All three entities (Whisper Ltd., Whisper USA and CYP) have the same address in Minneapolis, Minnesota. PSUF ¶ 56. The domain name "whisperyacht.com" is registered by an entity named "Churchill Industries" at the same address. Fulweiler Decl. Ex. C. The Lloyd's Register lists the same telephone number and mail address information for S/Y Whisper as for all three entities. Id. ¶¶ 8 & Ex. G. CYP's website states: "[w]hen you contact Churchill Yacht Partners about managing your charter yacht, you will be talking to experienced yacht management professionals that specialize in **managing** and marketing **a carefully selected fleet of the finest charter yachts and crews** in the marketplace." Id. Ex. I (emphasis supplied); see DSDF ¶¶ 11-12 (authenticity of Fulweiler Decl. Ex. I not disputed).

As relevant to this case, Geico Marine Insurance ("Geico") is the insurance company whose policy covers S/Y Whisper; it assumed responsibility for the maintenance and cure obligations owed to Plaintiff.[4] PSUF ¶¶ 48-49. The "policyholder" and "named insured" listed

---

[4] Defendants point out, correctly, that this fact cannot be used as an admission in support of Plaintiff's contention that he is a seaman. See Zeghibe v. ConocoPhillips Co., 793 F. Supp. 2d 478, 482 n.6 (D. Mass. 2011). However, the facts pertinent to the Geico policy are appropriate for consideration, though not dispositive without other evidence, in considering ownership and control over the vessel and its crew. Cordova v. Crowley Marine Servs., Inc., No. Civ.A. 02-2880, 2003 WL 21790195, at *5 (E.D. La. Aug. 1, 2003).

on the Geico policy are both Whisper Ltd. and Whisper USA. Fulweiler Decl. Ex. A; see PSUF ¶ 16. CYP is an additional insured. DSDF ¶ 13. Geico also lists an individual (John Fauth) as the "beneficial owner" of S/Y Whisper; according to a Florida Secretary of State filing, Fauth is the manager of CYP. Fulweiler Decl. Exs. A, H; see DSDF ¶ 17 (admits Fauth is "partial beneficial owner" of S/Y Whisper). While Plaintiff's monthly stipend for maintenance and cure came from Geico, some of the emails regarding the payments were copied to an employee of CYP. PSUF ¶ 49; Fulweiler Decl. Ex. J. The Captain of S/Y Whisper at the time of the accident was Simon Davison. PSUF ¶ 19. Captain Davison hired Plaintiff and paid him in cash from the vessel's account for his services. DSUP ¶ 25. The source of the cash in the vessel account is not specified. Plaintiff avers that he was hired by and was serving S/Y Whisper and its interests. Saltzman Decl. ¶ 42. Therefore, as he states under oath, he was effectively employed not only by Whisper Ltd., but also (or in the alternative) by CYP and/or Whisper USA. Compl. ¶ 28; PSUF ¶¶ 12, 14.

Apart from Whisper USA's status as the parent of Whisper Ltd., this undeveloped pre-discovery record does not reveal the precise relationships among CYP and the two Whisper entities. In particular, there is no information regarding who or what entity chooses the navigation routes or voyages for S/Y Whisper or who or what entity provides orders and instructions to its Captain.

In reliance on these potentially admissible facts and the inferences that they permit, Plaintiff contends that there is enough to give rise to a factual dispute regarding whether Whisper USA and/or CYP had responsibility for ownership, operation, management, crewing, equipping, manning and/or maintenance of the S/Y Whisper, in addition to or in lieu of the undisputed responsibility of Whisper Ltd. Similarly, he argues that the facts and inferences are also

5

sufficient to permit a fact-finder to conclude that any one of the three (Whisper USA, CYP or Whisper Ltd.) paid Plaintiff's wages and had sufficient control as to be his Jones Act employer.

As for the moving Defendants, on the issue of ownership, they rely on conclusory averments in affidavits submitted by Captain Davison and Mr. Ben Osborn, the Controller and Operations Manager of CYP and Controller of Whisper USA. ECF No. 21-2 (Davison Aff.); ECF No. 21-1 ("Osborn Aff."). These affidavits assert that Whisper USA and CYP have no ownership interest in S/Y Whisper. Davison Aff. ¶ 3; Osborn Aff. ¶ 9. They aver that Whisper Ltd. is the sole owner. DSUF ¶¶ 2, 8; Davison Aff. ¶ 3; Osborn Aff. ¶¶ 8-9. According to Mr. Osborn, neither Whisper USA nor CYP provide "vessel management services" to S/Y Whisper. Id. ¶ 12. They have not maintained "possession, command or navigation" of the vessel. Osborn Aff. ¶ 10. On the issue of employment, Captain Davison avers that he managed the employees aboard the S/Y Whisper and he paid workers such as Plaintiff in cash. Davison Aff. ¶¶ 6, 10; DSUF ¶ 13. The Osborn affidavit asserts that CYP has never submitted payments to Plaintiff and neither Whisper USA nor CYP provided instructions to or exerted control over Plaintiff's work on S/Y Whisper. Osborn Aff. ¶¶ 7, 16, 17. Mr. Osborn avers that Plaintiff has never been an employee of either Whisper USA or CYP. Id. ¶ 14.

Plaintiff points to potentially material discrepancies in the Davison/Osborn affidavits. That is, potentially admissible evidence he has proffered establish facts that call into question the accuracy of some of their conclusory averments. For example, Mr. Osborn averred that Whisper Ltd. pays for its own maintenance. Id. ¶ 13. However, triggered by Plaintiff's proffer of an affidavit from a marine electrician (Fulweiler Decl. Ex. E), who averred that he was instructed to send his invoices for work on S/Y Whisper to Whisper USA and to what appears to be an affiliate of CYP and who was paid directly by Whisper USA, Mr. Osborn clarified that Whisper

USA actually pays for the vessel's maintenance because of "convenience and timing," with reimbursement by Whisper Ltd. ECF No. 27-2 ¶ 7 ("Osborn Aff. II"). Similarly, Captain Davison averred that Plaintiff was a temporary day worker, Davison Aff. ¶¶ 8, 14, 43, but had to supplement his affidavit with a clarification in an attempt to explain away Plaintiff's proffer of a letter signed by Captain Davison stating that Plaintiff was a "deckhand" who was "permanently employed." ECF No. 27-1 ¶¶ 10-12 ("Davison Aff. II."). Because discovery has not yet commenced, neither Mr. Osborn nor Captain Davison has been subjected to cross examination.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To avoid foundering in the face of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading must allege a plausible entitlement to relief that gives the opposing parties fair notice of the claim and the grounds on which it rests. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

Whisper USA and CYP make only one argument that could be interpreted as a challenge to the sufficiency of the Complaint. It addresses paragraphs 16 and 17, which allege, "[u]pon information and belief," that Whisper USA, CYP and Whisper Ltd. all managed, supervised, crewed and operated S/Y Whisper and all were Plaintiff's employer. Citing Cosmopolitan

Shipping Co. v. McAllister, 337 U.S. 783 (1949), Whisper USA and CYP contend that, as a matter of law, a Jones Act defendant must be the employer of the seaman and that only one person or entity may be joined in a case in that capacity. See id. at 791 (there is "no doubt that under the Jones Act only one person, firm, or corporation can be sued as employer"). Therefore, they argue, Plaintiff's attempt to sue three entities as his Jones Act employer is a fatal flaw requiring dismissal as to two of them.

Defendants overstate the holding of Cosmopolitan Shipping.

For starters, it is clear that the pertinent language is dicta and that, since Cosmopolitan Shipping was decided, a Circuit split has developed regarding whether and in what circumstances a seaman can have more than one Jones Act employer. See Maine Mar. Acad. v. Fitch, Docket No. 1:17-CV-195-NT, 2019 WL 4467632, at *6 (D. Me. Sept. 18, 2019). The Fifth Circuit has straightforwardly stated that "[i]t may [] be possible for a seaman to have more than one Jones Act employer." Guidry v. S. La. Contractors, Inc., 614 F.2d 447, 452 (5th Cir. 1980) (citing Spinks v. Chevron Oil Co., 507 F.2d 216, 225-26 (5th Cir. 1975)). The Ninth Circuit has held that "there can be no more than one 'employer' for purposes of the Jones Act." Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1497, 1500 (9th Cir. 1995) abrogated on other grounds, Atl. Sounding Co. v. Townsend, 557 U.S. 404 (2009); Yuzwa v. M/V OOSTERDAM, No. CV 12-2663-CAS (AJWx), 2012 WL 6675171, at *6 (C.D. Cal. Dec. 17, 2012) ("It is true . . . that there can be only one Jones Act employer.") (citing Glynn, 57 F.3d at 1500). In line with the Ninth Circuit, the District of Maryland concluded the Supreme Court's decisions "point with convincing persuasiveness to the conclusion (even if they do not hold) that there can be no more than one 'employer' for purposes of the Jones Act." Ryan v. United States, 331 F. Supp. 2d 371, 382 (D. Md. 2004) (emphasis omitted). Yet, the First Circuit has "not

8

answer[ed] the question of whether a seaman can have more than one employer under the Jones Act." Maine Mar. Acad., 2019 WL 4467632, at *6.

Based on the text of the Jones Act and the persuasive reasoning of the Ninth Circuit and the District of Maryland, it appears more likely that our Circuit would adopt the reasoning in Glynn, holding that only one employer can be held liable for Jones Act purposes. However, this legal principle does not lead to the conclusion that Whisper USA and CYP must be dismissed at the pleading phase. Cosmopolitan Shipping actually holds that the issue of who is the Jones Act employer is a factual determination to be made on the basis of evidence presented. 337 U.S. at 791; see id. at 795 (while only one person, firm, or corporation can be sued as Jones Act employer, either defendant may be that employer; issue turns on answers to such questions as: "Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?"). Consistent with Cosmopolitan Shipping, it is perfectly permissible for a party like Plaintiff to plead in the alternative[5] that one of two or more entities was his Jones Act employer; that poses the matter as a fact issue to be resolved not at the pleading stage, but at trial. See, e.g., Maine Mar. Acad., 2019 WL 4467632, at *1, *7 (whether entity is Jones Act employer depends on whether it assumed sufficient control over worker); Hill v. Majestic Blue Fisheries, LLC, CIVIL CASE NO. 11-00034, 2013 WL 1499155, at *4-5 (D. Guam Apr. 12, 2013) (seaman may proceed against multiple defendants even though only one can ultimately be deemed the Jones Act employer and accordingly held liable); Maddux v. United States, No. 1:08-cv-442, 2010 WL 5184787, at *3 (S.D. Ohio 2010) (collecting cases holding plaintiff can claim against several entities in alternative under Jones Act when issue of fact exists as to who was "employer"). The

---

[5] Fed. R. Civ. P. 8(a)(3) specifically permits pleading in the alternative.

determination is highly fact-specific, requiring the fact-finder to "look to the venture as a whole and interpret any contractual language and labels in light of the actual operations." Maine Mar. Acad., 2019 WL 4467632, at *7 (citing Cosmopolitan Shipping, 337 U.S. at 795). A seaman should not be forced to speculate at his own peril as to whom the Court will eventually determine to be his Jones Act employer. Allan v. Brown & Root, Inc., 491 F. Supp. 398, 401 (S.D. Tex. 1980).

The Jones Act single-employer principle, if it is the controlling rule of law, does not justify dismissal of either Whisper USA or CYP for failure to state a claim. With no other arguments assailing the sufficiency of Plaintiff's Complaint, I recommend that the Fed. R. Civ. P. 12(b)(6) motion be denied.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and for Summary Judgment Pursuant to Fed. R. Civ. P. 56.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1) based on the lack of subject matter jurisdiction, the Court should apply a standard of review "similar to that accorded a dismissal for failure to state a claim under" Fed. R. Civ. P. 12(b)(6). Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012). However, "[w]hile the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and declarations show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses

the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The evidence must be in a form that permits the court to conclude that it will be admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment,[6] the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). There are no trial-worthy issues unless there is competent evidence to enable a finding favorable to the nonmoving party. Goldman v. First Nat'l Bank of Bos., 985 F.2d 1113, 1116 (1st Cir. 1993). That is, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). In light of its requirement of a factually supported record, summary judgment is unusual as a pre-discovery response to a pleading; it is usually reserved to a later phase of the case, after discovery has sharpened the parties' focus on the facts. As the Supreme Court held in Celotex

---

[6] As noted, this motion was captioned principally as a motion to dismiss, but it makes only one argument that conceivably arises pursuant to Fed. R. Civ. P. 12(b)(6). Otherwise, all of the arguments asserted by Whisper USA and CYP rely on facts outside the four corners of the Complaint, making it abundantly clear that they really seek summary judgment. Stein v. Royal Bank of Can., 239 F.3d 389, 392 (1st Cir. 2001) (test for determining whether district court's ruling is Fed. R. Civ. P. 12(b)(6) dismissal or entry of summary judgment is whether court actually took cognizance of supplementary materials). Plaintiff responded with his own factual proffer and has neither objected to nor acquiesced to treatment of the motion under Fed. R. Civ. P. 56. At the hearing, the Court advised the parties that it would consider the extraneous evidence and address the motion as one for summary judgment.

Corp. v. Catrett, 477 U.S. 317, 322 (1986), the "plain language" in Fed. R. Civ. P. 56(a) "mandates the entry of summary judgment, after adequate time for discovery."

As to operative legal principles, in advancing a claim of unseaworthiness (Count I), a seaman must proceed against the shipowner because the claim "enforces the shipowner's absolute duty to provide to every member of his crew a vessel and appurtenances reasonably fit for their intended use." Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996) (emphasis added); Smith v. United States, 943 F. Supp. 159, 169 (D.R.I. 1996) ("It is well-settled that shipowners have a duty to furnish a seaworthy ship."); see Lee v. Nacher Corp., 362 F. Supp. 3d 359, 369 (E.D. La. 2019) ("As a general rule, the vessel owner is the proper defendant for an unseaworthiness claim."). In addition to the direct owner, admiralty liability may be imposed on an "owner *pro hac vice*" of a vessel; this is "one who stands in the place of the owner for the voyage or service contemplated and bears the owner's responsibilities, even though the latter remains the legal owner of the vessel." McAleer v. Smith, 57 F.3d 109, 112 (1st Cir. 1995). Ownership *pro hac vice* applies to "one who contracts for the vessel itself and assumes exclusive possession, control, command and navigation thereof for a specified period," provided that a voyage charterer is not a *pro hac vice* owner. Id. at 112-13.

Otherwise, claims for Jones Act negligence (Count II) and maintenance and cure (Count III) must be alleged against the seaman's employer.[7] Cerqueira v. Cerqueira, 828 F.2d 863, 866 (1st Cir. 1987) ("[Seaman] can succeed on his Jones Act and 'maintenance and cure' claims only if [defendant] employed him."). Like Counts II and III, Plaintiff's claim for negligence under general maritime law (Count V), is normally alleged against the seaman's employer. Norfolk

---

[7] Sometimes but not always, the vessel owner and the employer of the seaman are one and the same. United States v. W. M. Webb, Inc., 397 U.S. 179, 192 (1970) (boat's owner is usually but not always employer of those who work on it); G. Gilmore & C. Black, The Law of Admiralty, § 6-7, at 285, § 6-21(a), at 335 (2d ed. 1975) (same).

12

Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 813-14 (2001) (recognizing cause of action under general maritime law for employer negligence as parallel to Jones Act negligence). Plaintiff's wage claim (Count IV) is a form of damages available for unseaworthiness or under the Jones Act and must be directed at the shipowner or his employer. Baucom v. Sisco Stevedoring, LLC, 560 F. Supp. 2d 1181, 1201 (S.D. Ala. 2008) ("There is no dispute between the parties that lost wages (past and future) are a proper category of damages in cases under the Jones Act and for unseaworthiness under the general maritime law.").

Under the Jones Act, no single phrase determines who is the employer. Cosmopolitan Shipping, 337 U.S. at 795. Rather, the determination requires a factually dense inquiry focused on control. Heath v. Am. Sail Training Ass'n, 644 F. Supp. 1459, 1468-69 (D.R.I. 1986) (Selya, J.). The fact-finder must look at the venture as a whole, examining what entity gave the orders and instructions that controlled not just the seaman, but also the Captain, what entity controlled the choice of the ports and the route while at sea and whose money paid the seaman's wages. Cosmopolitan Shipping, 337 U.S. at 795. Similarly, a third party who borrows a worker may become the Jones Act employer if the borrowing employer assumes sufficient control over the worker. Maine Mar. Acad., 2019 WL 4467632, at *7 ("[W]hether an employee is a borrowed servant . . . must be established by evidence such as control or direction of the seaman's work by the borrowing employer, direct or indirect payment of the seaman's wages by the borrowing employer, and an employment relationship between the seaman and the borrowing employer.").

At its core, the argument of Whisper USA and CYP that this Court lacks subject matter jurisdiction conflates with their summary judgment argument – both rest on the proposition that Plaintiff has not and cannot submit even a scintilla of evidence permitting the inference that they were owners or owners *pro hac vice* (based on exclusive "possession, command, and

13

navigation") or that they exercised sufficient control over Plaintiff as to qualify as his Jones Act employer.

The problem is that Plaintiff has done just that. He has proffered to the Court potentially trial-worthy proof, for example, that Whisper USA was paying all of the invoices associated with the maintenance of S/Y Whisper, that Captain Davison paid Plaintiff in cash from the "vessel's account," yet there are no facts regarding the source of these funds, permitting the inference that they came from Whisper USA. Similarly, there is evidence that CYP held itself out publicly as "managing" both the "yachts" and their "crews" associated with its charters, permitting the inference that it had possession, command and control. Yet, the record is either undeveloped or disputed regarding the key questions itemized in Cosmopolitan Shipping, particularly whose orders controlled Captain Davison (which he transmitted to the crew, including Plaintiff), whose money was used to pay the crew's wages and whose initiative and judgment controlled the choice of the routes of navigation followed by S/Y Whisper. And other than Whisper Ltd.'s status as a Cayman Island entity and a subsidiary of Whisper USA, the record is silent regarding whether Whisper Ltd. has any substance. Plaintiff has effectively countered these deficits with a trial-worthy proffer establishing an "interrelated course of operations [that] existed between" the vessel, on one hand, and Whisper USA and CYP on the other, including the permissible (on these facts) inference that Whisper Ltd. may be a mere paper creation. Cordova, 2003 WL 21790195, at *5; see Allan, 491 F. Supp. at 402-03 (discovery may establish that entity claiming to be owner/employer is a mere paper creation). While the isolated facts that an entity was a named insured and the parent of the owner of the vessel may be insufficient for ownership *pro hac vice*, Cordova, 2003 WL 21790195, at *5, this pre-discovery record already has much more than what is necessary to overcome the pending challenge to Plaintiff's claims.

At bottom, Plaintiff has proffered sufficient evidence of a web of relationships between and among S/Y Whisper, Whisper Ltd., Whisper USA and CYP to support the inference of ownership *pro hac vice* by either Whisper USA or CYP with respect to possession, command and navigation of S/Y Whisper. See McAleer, 57 F.3d at 112. The same is true regarding who was Plaintiff's employer. That is, Plaintiff's proffer is sufficient to permit the inference that either Whisper USA or CYP may ultimately be found to qualify as his employer. Based on this record, Plaintiff should be permitted to conduct discovery. Allan, 491 F. Supp. at 401-02 (summary judgment denied to allow seaman's estate to pursue discovery on whether six entities were "mere paper creation[s] or alter ego[s]" when certain defendants "assert[ed] that they held no ownership interest"). Accordingly, whether considered pursuant to Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 56, the pending motion should be denied.

## III.  CONCLUSION

Based on the foregoing, I recommend that the Court deny the motion (ECF No. 20) of Defendants Whisper Yacht (USA), LLC, and Churchill Yacht Partners, LLC, to dismiss and in the alternative for summary judgment.[8]

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.

---

[8] In connection with the pending motion, Plaintiff's responsive brief sought to incorporate his cross-motion for sanctions. ECF No. 26 at 13-14. The sanctions motion had been submitted in response to the first dispositive motion. In my report and recommendation regarding the first motion, I recommended that sanctions be denied without prejudice. ECF No. 37 at 6. If, despite Plaintiff's failure to make a standalone motion as required by DRI LR Cv 7(a)(1), as well as his failure to develop the sanctions argument in the context of the instant motion, the Court is inclined to consider sanctions, I recommend that such a motion be denied without prejudice.

See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 19, 2019